**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| AMANDA A. PARFAIT, | Case No.: 6:25-CV-01296-AGM-NWH |
| Plaintiff, | |
| vs. | |
| EQUIFAX CONSUMER SERVICES LLC, | |
| EXPERIAN INFORMATION SOLUTIONS LLC, | |
| FIRST FEDERAL CREDIT CONTROL INC | |
| Defendant(s) | |

## PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY

## JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF

## SUMMARY JUDGMENT

COMES NOW, Plaintiff, Amanda A. Parfait, appearing pro se, and

respectfully moves this Honorable Court pursuant to Rule 56(a) of the Federal Rules

of Civil Procedure for entry of partial summary judgment on the issue of liability

only against Defendants Equifax Consumer Services LLC ("Equifax") and First

Federal Credit Control Inc. ("FFCC"). Plaintiff additionally moves for immediate

injunctive relief directing Defendants to delete Collection Item *0744 from all

consumer reporting databases. Damages will be reserved for trial before the jury, as the Court has scheduled for the September 2027 trial term. Parfait v. Equifax Consumer Servs., Inc., No. 6:25-cv-01296-AGM-NWH (M.D. Fla.), Case Management and Scheduling Order (Doc. 33, Oct. 28, 2025).

This motion is filed in compliance with Local Rule 1.08's typography requirements and is refiled pursuant to this Court's May 18, 2026, Order (Doc. 56) striking Plaintiff's prior motion (Doc. 40) for failure to comply with Local Rule 1.08. The substantive record supporting this motion—including Defendants' oppositions (Docs. 46, 48) and Plaintiff's replies (Docs. 49, 50)—has been fully briefed. Plaintiff respectfully submits that the undisputed evidence, Defendants' own admissions, and the governing law establishes liability as a matter of law.

Plaintiff appears before this Court pro se. Pleadings filed by pro se litigants are held to a less stringent standard than those drafted by attorneys and must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). The Court is accordingly requested to construe all of Plaintiff's submissions in the light most favorable to her, while recognizing that the record independently compels judgment in her favor.

## I. INTRODUCTION

This action arises from a mixed-file error in which Defendants inaccurately

reported Collection Account *0744—a debt belonging to a different consumer, Amanda M. Parfait—on Plaintiff Amanda A. Parfait's consumer report, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i(a), and 1681s-2(b). See Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).

Defendants did not merely err. The Automated Consumer Dispute Verification ("ACDV") produced in discovery (EXHIBIT G; Doc. 40-7, Pl.'s Mot. for Partial Summ. J. Ex. G, Dec. 8, 2025) reveals that Defendants actively modified personal identifiers—including date of birth, name, and address—to manufacture a false "verification" of another consumer's debt under Plaintiff's Social Security Number. Despite Plaintiff's repeated disputes and submission of documentary evidence— including correspondence from FFCC to Plaintiff attempting to collect a debt belonging to consumer Amanda M. Parfait and the medical documentation from the service rendered to Amanda M. Parfait (EXHIBIT B)—Defendants continued reporting this false account on Plaintiff's credit file.

The record before this Court is undisputed. No genuine issue of material fact exists as to Defendants' liability. Summary judgment on liability is therefore not only appropriate—it is required. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff filed her Complaint on July 14, 2025. Parfait v. Equifax Consumer Servs., Inc., No. 6:25-cv-01296-AGM-NWH (M.D. Fla.), Compl. (Doc. 1, Compl., filed July 14, 2025). All three Defendants were served on July 15, 2025 (Docs. 3–5 Returns of Service, filed July 15, 2025). Experian and FFCC filed Answers on August 5, 2025 (Doc. 10, Experian Answer; Doc. 11, FFCC Answer); Equifax filed its Answer on August 7, 2025 (Doc. 18, Equifax Answer). The Court entered its Case Management and Scheduling Order on October 28, 2025, setting the dispositive motions deadline for April 7, 2027, and a jury trial for the September 2027 term (Doc. 33 Case Mgmt. & Scheduling Order).

Plaintiff filed a Motion for Summary Judgment on December 8, 2025 (Doc. 40). FFCC and Equifax filed oppositions on January 7, 2026 (Doc. 46; Doc. 48). Plaintiff filed replies on January 12, 2026 (Doc. 49; Doc. 50). On May 18, 2026, the Court struck Doc. 40 for failure to comply with Local Rule 1.08 and expressly permitted Plaintiff to refile in compliance with the Local Rules (Doc. 56). This motion is that refiled, compliant submission. The substantive briefing from Docs. 46, 48, 49, and 50 remains part of the record and Plaintiff incorporates those arguments by reference to the docket.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

4

**1. Plaintiff's Identity Documentation Provided to Equifax.**

In February 2025, Plaintiff provided Equifax with her government-issued identification and Social Security card on two separate occasions by U.S. mail and in a secured email sent by Equifax. As confirmed by Equifax's own RFP production, EIS-PARFAIT-000315 reflects Plaintiff's letter dated February 7, 2025, enclosing photocopies of her Florida driver's license and Social Security card, both accurately reflected Plaintiff's full name including middle name and/or initial, date of birth, and Social Security Number. EIS-PARFAIT-000315 (Equifax RFP Response, p. 315); Exhibit H (email and written communication from Plaintiff to Equifax with confirmation of identification).

**2. FFCC's Communication Confirming Another Consumer's Debt.**

In November 2024, Plaintiff received correspondence from FFCC addressed to her but containing the personal information—including the name "PARFAIT, AMANDA M," a different address, phone number, and medical documentation from Emergency Physicians of Central Florida—of a different individual, Amanda M. Parfait. Exhibit B; see also FFCC Internal Fact Sheet (Doc. 49-1, p. 1, Bates FFCC6) (reflecting CRS # BPJ465, "Regarding: PARFAIT, AMANDA M," two date of birth 07/14/94 and 02/19/18, and balance owed to Emergency Physicians of Central Florida). Plaintiff promptly notified FFCC the debt was not hers. FFCC's own internal records therefore reflected a different consumer's name, date of birth, and account information before it ever furnished Collection Item *0744 to Equifax.

5

This correspondence predates FFCC's addition of the account to Plaintiff's credit file in March 2025 and establishes that FFCC possessed actual knowledge of the identity discrepancy before furnishing the account. See 15 U.S.C. § 1681s-2(b).

**3. Discovery of Inaccurate Collection Account on Plaintiff's Credit Report.**

In May 2025, Plaintiff reviewed her Equifax consumer report and discovered that Collection Item *0744, furnished by First Federal Credit Control (original creditor: Emergency Physicians of Central Florida), had been reporting on her file since March 2025 with a comment stating, "CONSUMER DISPUTES THIS ACCOUNT INFORMATION." Exhibit I (Plaintiff's May 2025 Equifax credit report). The debt did not belong to Plaintiff. Plaintiff filed a written dispute with Equifax in June 2025. Equifax acknowledged the dispute but continued reporting the account. Exhibit C pg.2 (Equifax dispute response). The inaccurate account directly caused MIDFLORIDA Credit Union to deny Plaintiff's $250,000 mortgage/land loan application on June 26, 2025, with the denial letter citing the derogatory Equifax account. Exhibit A (MIDFLORIDA Credit Union denial correspondence, June 26, 2025).

**4. The ACDV Confirms Deliberate Modification of Personal Identifiers.**

The ACDV generated for Collection Item *0744—produced by Equifax in discovery, filed as Exhibit G (Doc. 40-7), and appearing at EIS-PARFAIT-000331 in Equifax's RFP Response—was generated on June 5, 2025, in response to Plaintiff's dispute

coded "001: NOT HIS/HERS. PROVIDE COMPLETE ID." The ACDV was completed on June 9, 2025, by FFCC employee RJ Jovanovic-Blythiny with Response Code "Verified As Reported"—despite the Modified Consumer Identity column reflecting a different date of birth—confirming the following deliberate field manipulations captured in the "MODIFIED CONSUMER IDENTITY" column:

    a. Plaintiff's SSN was carried forward in both the Reported and Modified columns, confirming it was used to verify an account not belonging to her;

    b. The date of birth was modified from 01/02/1987 (Plaintiff's actual DOB per her government-issued identification) to 07/14/1994 (the other consumer's date of birth, consistent with FFCC's own correspondence to Plaintiff containing another consumer's information and internal Fact Sheet (Doc. 49-1 pg 1, FFCC6) (Exhibit B, FFCC Nov. 2024 collection correspondence);

    c. The address in both columns reflects 10422 Bridlewood Ave, Orlando, FL 32825 (Plaintiff's address), despite FFCC's own internal documentation (Exhibit B) reflecting a different address and phone number attributed to the other consumer; and

    d. The name field was altered from "PARFAIT AMANDA A" (Reported column) to "PARFAIT AMANDA" (Modified column), stripping Plaintiff's middle initial "A" and failing to substitute Amanda M. Parfait's middle initial

"M," despite FFCC's own records identifying the other consumer as "PARFAIT, AMANDA M." (Exhibit G; Doc. 49-1, FFCC6)

These modifications are not clerical errors. They reflect a pattern of deliberate identity-field manipulation to force an artificial match between another consumer's debt and Plaintiff's identifying information. Exhibit J (Plaintiff's Orlando Health patient portal records) affirmatively establishes that Plaintiff Amanda A. Parfait is a distinct individual from the medical debtor—her own healthcare records are inconsistent with the Emergency Physicians of Central Florida debt at issue. Exhibit L (whitepages.com background check for Amanda M. Parfait) corroborates not only that the other consumer's prior address matches the address reflected in FFCC's original correspondence (Exhibit B) and is distinct from Plaintiff's address but also so does Amanda M. Parfait's own Declaration/Affidavit (Exhibit M) doe. See Williams v. First Advantage LNS Screening Sols., Inc., 947 F.3d 735, 744 (11th Cir. 2020); Miller v. Equifax Info. Servs., LLC, 2018 WL 6247085, at *4 (N.D. Cal. 2018).

**5. Equifax Admitted It Relies Heavily, If Not Solely, on Furnisher Verification.**

In response to Plaintiff's Interrogatory No. 4, Equifax admitted that upon receiving a consumer dispute, it transmits an ACDV to the data furnisher, asks the furnisher to investigate, and: "[i]f the data furnisher verifies that the account is being accurately reported, and such verification comports with Equifax's policies and procedures, then Equifax will make no changes to the account and will continue to report it as it

8

previously appeared on the credit file." Equifax ROGs at pg. 7–9 (Interrogatory No. 4) (Exhibit F). Equifax further admitted in response to Interrogatory No. 10 that "[t]he information at issue in this case was verified as accurate by FFCC." Equifax ROGs at page 16 (Interrogatory No. 10; Exhibit N). However, most critically, Equifax's own dispute resolution response sent to Plaintiff on June 9, 2025, produced at EIS-PARFAIT-000337 of Equifax's RFP Response to Plaintiff, expressly states regarding Account ****0744: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU…" EIS-PARFAIT-000337 (Exhibit C –Equifax Dispute Resolution Response dated June 9, 2025). This statement, made directly to Plaintiff after her dispute, constitutes Equifax's own admission that it accepted and endorsed FFCC's verification as its own conclusion—without an independent investigation—in direct violation of 15 U.S.C. § 1681i(a) and Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

**6. The Actual Debtor Confirmed in a Sworn Declaration That the Debt Is Hers.**
Amanda M. Parfait executed a sworn Declaration/Affidavit confirming that Collection Item *0744 is her debt, not Plaintiff's, and that her personal identifiers— including name (Amanda M. Parfait), address, phone number, date of birth (07/14/1994), and Social Security Number—are distinct from Plaintiff's and consistent with those appearing in FFCC's original correspondence (Exhibit M and Exhibit B); Pl.'s Notice of Supplemental Evidence (Doc. 55, filed May 8, 2026). This is direct, uncontroverted evidence that Defendants reported and verified another

9

consumer's debt as Plaintiff's. Defendants produced no evidence in their opposition filings contradicting the Declaration or establishing that the debt belongs to Plaintiff. (Doc. 46; Doc. 48).

### 7. Continued Reporting After Actual Notice.

Despite Plaintiff's repeated disputes and submission of her identity documents (Exhibits D, H), Defendants continued reporting Collection Item *0744 on Plaintiff's consumer report through at least December 2025 (Exhibit O, pg. 1). Equifax credit reporting records confirming the account continued to appear through December 2025. Collection Item *0744 was ultimately removed from Plaintiff's consumer report no later than May 2026 (Exhibit O, pg. 2-3). Pl.'s Notice of Supplemental Evidence (Doc. 55, filed May 8, 2026). Plaintiff notes that Equifax notifications confirmed her credit reports were available for viewing between January and April 2026, but the reports are currently not accessible for that period, preventing confirmation of the exact month of removal (Exhibit P).

### 8. Plaintiff's Documented Damages (Reserved for Trial).

As a direct and proximate result of Defendants' conduct, Plaintiff's harm suffered included but was not limited to the following, the full extent of which will be presented to the jury at the September 2027 trial:

10

a. Denial of a $250,000 mortgage/land loan by MIDFLORIDA Credit Union on June 26, 2025, citing Equifax's inaccurate reporting. Exhibit A (MIDFLORIDA Credit Union denial correspondence, June 26, 2025).

b. Financing of a 2025 Audi Q7 at an APR of 8.70% over 84 months—when Plaintiff's true credit profile could have qualified her for a better borrower rate. The excess interest from Defendants' inaccurate reporting is attributable to Plaintiff's placement in a higher-risk credit tier caused solely by Defendants' inaccurate reporting. Exhibits D and E.

c. Multiple hard credit inquiries staining and reducing Plaintiff's credit score and further impairing her access to favorable credit terms. (Exhibit E interest rate and hard inquiry screenshots).

d. Emotional distress, anxiety, humiliation, sleep loss, spousal conflict, social withdrawal, mood instability, and stress-related physical symptoms—all compensable without medical records or expert testimony. Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 503 (4th Cir. 2007) (affirming $245,000 emotional distress award on plaintiff's sworn testimony alone); Ball v. Nat'l Enter. Sys., Inc., No. 1:16-cv-00853-WKW-DAB (M.D. Ala.) (FCRA action against Equifax and Navient Solutions alleging actual damages including emotional distress from failure to reasonably reinvestigate under 15 U.S.C. §§

11

1681i(a), 1681s-2(b)). Exhibit D (Plaintiff's sworn Affidavit).

## 9. Timeliness.

Plaintiff first learned of the FFCC account in November 2024 (Exhibit B), and FFCC did not add Collection Item *0744 to Plaintiff's Equifax report until March 2025 (Exhibit I). All claims are timely under the FCRA's two-year limitations period. 15 U.S.C. § 1681p.

## IV. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome under governing law; a dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant identifies the absence of a genuine dispute, the non-moving party must produce more than "a mere scintilla of evidence." Id. at 252; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment on liability in FCRA cases is appropriate—and routinely granted—where the undisputed evidence shows: (a) mismatched identifiers or mixed-file errors; (b) failure to conduct a reasonable reinvestigation; (c) reliance on

12

automated or superficial verification; or (d) failure to correct inaccuracies after actual notice. Williams, 947 F.3d at 744; Hinkle, 827 F.3d at 1302.

Consistent with binding Eleventh Circuit authority, Plaintiff moves for summary judgment on liability only. The quantum of damages—actual, statutory, and punitive—is reserved for the jury. See Cahlin, 936 F.2d at 1161; Anderson, 477 U.S. at 255 (credibility determinations and weighing of evidence are jury functions). The sole damages-adjacent relief Plaintiff seeks at this stage is injunctive: immediate deletion of Collection Item *0744 from all consumer reporting databases, which is a form of relief the Court may order independent of damages.

## V. ARGUMENT

### A. Equifax Violated 15 U.S.C. §§ 1681e(b) and 1681i(a) as a Matter of Law.

The FCRA requires CRAs to maintain "reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). Upon a consumer's dispute, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). Both obligations are violated here on the undisputed record.

First, Equifax's own discovery admission establishes that it conducted no independent reinvestigation. Equifax sent an ACDV to FFCC, received a response,

13

and accepted it without independently comparing the DOB, address, SSN, name, or phone number on the disputed account against Plaintiff's verified identity documents. Doc. 40-8 (identity documents filed with original MSJ); (Exhibit G) Doc. 49 (Pl.'s Reply to FFCC's Opp'n, Jan. 12, 2026). This is precisely the "parroting" that the Eleventh Circuit held unlawful in Hinkle. 827 F.3d at 1302.

Second, the ACDV itself (Exhibit G) shows that the "MODIFIED CONSUMER IDENTITY" field was altered between the time FFCC sent the debt collection correspondence (Exhibit B) and the time the account was verified. The DOB was changed to match the other consumer; the name was stripped of its middle initial; and the address and SSN added was modified to match Plaintiff rather than the other consumer. A reasonable CRA reviewing its own ACDV would have detected these modifications as red flags. Equifax did not. See Williams, 947 F.3d at 744; Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993).

Third, Equifax continued reporting this account through at least December 2025 but no later than May 2026 (Equifax RFP Response, EIS-PARFAIT; Doc. 55 (Pl.'s Notice of Supplemental Evidence, filed May 8, 2026)), long after it received Plaintiff's dispute and her identity documents. No reasonable jury could find that continued reporting under these circumstances constitutes compliance with §§ 1681e(b) or 1681i(a). See Safeco, 551 U.S. at 57; 15 U.S.C. § 1681i(a)(5)(A). Moreover, the fact that Equifax ultimately removed Collection Item *0744 from

14

Plaintiff's consumer report no later than May 2026 is itself probative: a jury could reasonably infer that the account never should have been placed on Plaintiff's report, and that its removal constitutes a tacit acknowledgment that the account did not belong to Plaintiff.

**B. FFCC Violated 15 U.S.C. § 1681s-2(b) as a Matter of Law.**

Upon receiving notice of a consumer dispute, a furnisher must: (1) conduct a reasonable investigation; (2) review all relevant information provided by the CRA; (3) report the results to the CRA; and (4) correct or delete inaccurate information. 15 U.S.C. § 1681s-2(b)(1)(A)–(E). FFCC failed all four duties.

FFCC possessed its own correspondence (Exhibit B) reflecting Amanda M. Parfait's name, address, phone number, and medical information—unambiguously different from Plaintiff's identifiers. When FFCC received the ACDV dispute, it was obligated to investigate and/or compare that correspondence against the disputed account's identifiers. See Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008); Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014). Instead, FFCC modified the ACDV fields—changing the DOB, stripping the middle initial, altered the social security number, and altering the address—to manufacture a false match to Plaintiff. The ACDV (Exhibit G) documents this manipulation.

FFCC's interrogatory responses (Doc. 46-1 (FFCC's Verified Resps. to Pl.'s First Set of Interrogs., served with Doc. 46, Jan. 7, 2026)) produced in opposition to Plaintiff's prior summary judgment motion (Doc. 40, Pl.'s Mot. for Partial Summ. J., Dec. 8, 2025) contain no evidence of a meaningful investigation. FFCC identified no personnel who reviewed Exhibit B against the ACDV, no comparison of identifiers, and no documentation of any analysis. FFCC's "investigation" was facially unreasonable as a matter of law. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Hinkle, 827 F.3d at 1302. Further, FFCC's own internal "How to Handle Disputes" policy document (Doc. 49-1, FFCC7–FFCC8, filed Jan. 12, 2026) required its employees to "[r]eview dispute reason, see if the information matches... If it does not match, mark the account to be removed from credit," and that "[i]f you do not receive clear verification from the client within 30 days, we have to remove the account from the debtor's credit." FFCC followed neither step. Its failure to comply with its own written policy is independent evidence of reckless disregard. Safeco, 551 U.S. at 57.

**C. Defendants' Conduct Was Willful Under 15 U.S.C. § 1681n.**

Willfulness under the FCRA includes conduct reflecting "reckless disregard" of statutory obligations—meaning an unjustifiably high risk of harm that is either known or so obvious that it should be known. Safeco, 551 U.S. at 57, 68. The following undisputed facts establish willfulness:

16

- The ACDV (Exhibit G) shows multiple identity fields were modified after FFCC's initial correspondence (Exhibit B) confirmed a different consumer's identity. No innocent explanation exists for modifying a DOB during a reinvestigation. Williams, 947 F.3d at 744; 15 U.S.C. § 1681e(b).

- FFCC transmitted to Plaintiff another consumer's protected health information, confirming FFCC knew the account did not belong to Plaintiff before it was placed on her credit file. 15 U.S.C. § 1681s-2(b)(1)(B).

- Equifax's discovery admission that it accepts furnisher responses without independent review (Exhibit C) reflects a systemic policy of reckless disregard for the FCRA's reinvestigation mandate. Hinkle, 827 F.3d at 1302; 15 U.S.C. § 1681i(a).

- Both Defendants continued reporting the false account after receiving Plaintiff's identity documents (Exhibits D, H). Additionally, FFCC's own counsel refused to confer with Plaintiff during the pendency of this litigation (Doc. 41, Pl.'s Notice of Defense Counsel's Refusal to Confer, Dec. 16, 2025), a pattern of conduct consistent with reckless disregard for consumer rights under Safeco, 551 U.S. at 57. Continued publication after actual notice is textbook willfulness. Safeco, 551 U.S. at 57; Gorman, 584 F.3d at 1163; 15 U.S.C. § 1681i(a)(5)(A).

17

The jury in Miller v. Equifax Info. Servs., LLC, No. 3:11-cv-01231 (D. Or. 2013)—a case involving the same Defendant and a substantially similar mixed-file error affecting date of birth, Social Security number, and collection accounts—awarded $180,000 in compensatory damages and $18,400,000 in punitive damages. Although the trial court subsequently reduced the punitive award on constitutional grounds, the jury's finding of willful misconduct and the compensatory award were upheld. That a jury found Equifax's conduct in a comparable mixed-file case worthy of an $18,400,000 punitive award confirms that this category of violation warrants substantial consequences. Plaintiff's damages evidence will be presented at the September 2027 trial. Doc. 33.

## D. Defendants Cannot Assert a Statute of Limitations Defense.

Plaintiff first learned of the FFCC account in November 2024 (Exhibit B), and FFCC did not add Collection Item *0744 to Plaintiff's Equifax report until March 2025 (Exhibit I). All claims were filed on July 14, 2025 (Doc. 1, Compl., filed July 14, 2025)—well within the FCRA's two-year limitations period running from the date of discovery. 15 U.S.C. § 1681p. No limitations defense is available on these facts.

## VI. SUPPORTING LEGAL AUTHORITY

### 1. Williams v. First Advantage — Mixed-File Liability (Binding, 11th Cir.)

18

In Williams v. First Advantage LNS Screening Sols., Inc., 947 F.3d 735 (11th Cir. 2020), the Eleventh Circuit held that a CRA is liable under § 1681e(b) when it associates data belonging to another consumer despite the presence of mismatched identifiers. The mismatches in Williams—which included only limited discrepancies—were sufficient to impose liability. The mismatches here are more severe: DOB, name, address, phone number, and account ownership all confirmed a different consumer, and SSN was misused to force a match. Under Williams, liability is established as a matter of law.

## 2. Hinkle v. Midland Credit — No Parroting (Binding, 11th Cir.)

In Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295 (11th Cir. 2016), the Eleventh Circuit held that a CRA violates § 1681i(a) when it forwards a dispute to the furnisher and accepts the furnisher's response without independent investigation. Equifax's own discovery admission (Exhibit F and O) confirms this is exactly what it did. Under Hinkle—which is directly controlling—Equifax's reinvestigation procedure is unlawful as a matter of law.

## 3. Miller v. Equifax — DOB/SSN Conflicts and Damages Benchmark

In Miller v. Equifax Info. Servs., LLC, No. 3:11-cv-01231 (D. Or. 2013), the same defendant—Equifax—faced liability for identical mixed-file conduct involving mismatched DOB and identity fields. The jury awarded $180,000 in compensatory damages and $18,400,000 in punitive damages, for a total award of $18,580,000.

19

Although the trial court reduced the punitive award to $1,620,000 on constitutional grounds, the jury's willfulness finding and the compensatory award were upheld in full. While persuasive rather than binding, Miller is factually parallel and directly relevant to the damages Plaintiff will seek at trial. Plaintiff's request—which this motion does not ask the Court to adjudicate—is conservative by comparison.

**4. Sloane v. Equifax & Ball v. National Enterprise Systems — Emotional Distress Damages Under the FCRA**

In Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495 (4th Cir. 2007), the Fourth Circuit affirmed a jury award of $245,000 for emotional distress in an FCRA case, holding that a plaintiff's detailed sworn testimony—describing insomnia, marital strain, anxiety, and humiliation—is sufficient to support actual damages without medical records or expert testimony. Similarly, in Ball v. National Enterprise Systems, Inc., No. 1:16-cv-00853-WKW-DAB (M.D. Ala.), an FCRA action against Equifax and Navient Solutions, LLC established that failure to conduct a reasonable reinvestigation under 15 U.S.C. §§ 1681i(a) and 1681s-2(b) causes actual damages including emotional distress recoverable under §§ 1681n and 1681o. The Eleventh Circuit has similarly recognized emotional distress as recoverable under the FCRA. See Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151 (11th Cir. 1991). Plaintiff's affidavit (Exhibit D) and trial testimony will establish the nature and extent of her emotional distress. This question is reserved for the jury.

**5. Ramones v. AR Resources — Punitive Damages for Mixed Files (S.D. Fla.)**

In Ramones v. AR Res., Inc., No. 19-62949-CIV-SCOLA/SEITZ (S.D. Fla. Apr. 8, 2022), the court upheld punitive damages where mixed files occurred, identity mismatches were ignored, and reinvestigations were superficial. Plaintiff's case presents more egregious facts: deliberate field modification, SSN misuse, transmission of another consumer's protected health information, and continued reporting after receiving the actual debtor's sworn declaration. Punitive damages will be addressed at trial. 15 U.S.C. § 1681n(a)(2); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003).

**6. Cushman v. TransUnion — Meaningful Independent Reinvestigation**

In Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997), the Third Circuit held that a CRA may not rely solely on furnisher verification; it must conduct a meaningful reinvestigation when a consumer identifies specific inaccuracies. This standard reinforces Hinkle's binding Eleventh Circuit rule. Defendants' failure to compare a single identifier between the ACDV and Plaintiff's provided documents— despite the ACDV's own "MODIFIED CONSUMER IDENTITY" notation—is not a reinvestigation under any standard.

## VII. RELIEF REQUESTED

For the foregoing reasons, the undisputed record establishes that Defendants Equifax

21

and FFCC violated the FCRA as a matter of law. No genuine issue of material fact exists as to liability. Plaintiff respectfully requests that this Court:

A. GRANT Plaintiff's Motion for Partial Summary Judgment on the issue of liability against Defendants Equifax Consumer Services LLC and First Federal Credit Control Inc.;

B. DECLARE that Equifax violated 15 U.S.C. §§ 1681e(b) and 1681i(a), and that FFCC violated 15 U.S.C. § 1681s-2(b), as a matter of law;

C. DECLARE that Defendants' conduct constitutes willful noncompliance under 15 U.S.C. § 1681n, as established by the undisputed record;

D. ORDER Defendants to immediately and permanently delete Collection Item *0744 from all consumer reporting databases and downstream reporting systems, and to provide written confirmation of such deletion to Plaintiff within fourteen (14) days of the Court's order; and

E. RESERVE all damages issues—including actual damages under 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), statutory damages under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and costs under 15 U.S.C. §§ 1681n(c) and 1681o(c)—for determination by the jury at

22

23

the September 2027 trial, consistent with the Court's Scheduling Order (Doc.

33) and the Seventh Amendment.

Respectfully submitted,

Amanda A. Parfait, Pro Se

10422 Bridlewood Ave

Orlando, FL 32825

(561) 914-6561

sewtillblue@gmail.com

Dated: May 26, 2026

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2026, a true and correct copy of the foregoing Renewed Motion for Summary Judgment in Part and Memorandum of Law, together with all Exhibits A–P, was served via electronic mail upon counsel for Defendants:

Sylas Kern, Seyfarth Shaw LLP — Counsel for Equifax Consumer Services LLC

Dale Golden, Martin Golden Lyons Watts & Morgan, PLLC — Counsel for First Federal Credit Control Inc.

Noah DiPasquale, Troutman Pepper Locke LLP — Counsel for Experian Information Solutions LLC

**Amanda Ari Parfait**

Amanda A. Parfait, Pro Se

24