UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| AMANDA A. PARFAIT, | : | CASE NO. 6:25-CV-01296-AGM-NWH |
| Plaintiff, | : | |
| vs. | : | |
| FIRST FEDERAL CREDIT CONTROL, INC, ET AL. | : | |
| | : | |
| Defendant(s) | | |

---

### DEFENDANT FIRST FEDERAL CREDIT CONTROL, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Now comes Defendant First Federal Credit Control, Inc., by counsel, and opposes Plaintiff's Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment should be denied for three reasons: (1) Plaintiff has failed to establish that a reasonable investigation would have revealed inaccuracy in Defendant's credit reporting (see *Milgram v. Holiday Inn Club Vacations*, 98 F.4th 1359, 1367 (11th Cir. 2024)); (2) Plaintiff has failed to establish that Defendant did not conduct a reasonable investigation of Plaintiff's alleged dispute. *See Felts v. Wells Fargo Bank, Nat'l Ass'n*, 893 F.3d 1305, 1312-13 (11th Cir. 2018)); and (3) Plaintiff submitted no evidence of willful misconduct. *See* 15 U.S.C. § 1681n.

Plaintiff begins her memorandum in support of her motion by accusing Defendant of "manufacturing" "a false 'verification' of another consumer's debt under Plaintiff's Social Security Number." Plaintiff relies on her "Exhibit G" for this but Plaintiff's Exhibit G does not show that Defendants "manufactured" anything.

Plaintiff claims that "The record before this Court is undisputed." That that is not true. Plaintiff did not submit admissible evidence in support of her motion and none of the many

documents submitted by Plaintiff is admissible evidence, except possibly Plaintiff's affidavit. "[I]n order for a document to be considered on a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, or otherwise authenticated pursuant to the Federal Rules of Evidence." *Smith v. Campus Lodge Gainesville*, No. 1:20-cv-168-AW-GRJ, 2021 U.S. Dist. LX 250343, at *6 (N.D. Fla. Sep. 23, 2021) "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.*" Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993), *citing Hal Roach Studios, Inc. v. Richard Feiner and Co*., 896 F.2d 1542, 1550-51 (9th Cir. 1990); *Martz v. Union Lab. Life Ins. Co*., 757 F.2d 135, 138 (7th Cir. 1985).  "To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)

A plaintiff moving for summary judgment has the burden of proving "that there is no genuine issue of material fact as to each and every element" on each claim at issue.  *Alt. Materials, LLC v. Monroe*, No. 5:20-cv-239-AW/MJF, 2022 U.S. Dist. LX 118155, at *17 (N.D. Fla. June 1, 2022); *citing United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys*., 941 F.2d 1428, 1438 (11th Cir. 1991); *ConSeal Int'l Inc. v. Neogen Corp*., 488 F. Supp. 3d 1257, 1271-72 (S.D. Fla. 2020).  This is a significant burden. And Plaintiff has not met it.

Plaintiff has, in fact, failed to properly authenticate *any* of the "evidence" she submitted with her motion except for a single affidavit.  For this reason, the Court should deny Plaintiff's Motion.

## I.        Plaintiff's Statement of Facts

Although Plaintiff fails to provide a factual history of her claims supported with evidence, she does include in her motion what she calls a "Relevant Procedural History."  This procedural

history does include references to the docket, making it theoretically verifiable.  The next portion of Plaintiff's memorandum is entitled "Statement of Undisputed Material Facts."  This section refers to many of the documents filed by Plaintiff.  But, as discussed above, Plaintiff's documents are not admissible evidence because none of them has been authenticated by an affidavit or declaration. For this reason, none of the "facts" discussed by Plaintiff is established by evidence.

Additionally, although Plaintiff claims that documents she received from FFCC were altered, she fails to explain how she reached that conclusion. Nor does she provide any evidence supporting that scandalous assertion. For instance, on page 7 of her memorandum, (PageID No. 421), Plaintiff claims that the document she submitted as Exhibit B contained a modified date of birth and a modified address and phone number. This document is not authenticated. It is therefore inadmissible for any purpose.

## II.    Plaintiff's claim against Equifax under 15 U.S.C. §§ 1681e(b) and 1681i(a).

The next portion of Plaintiff's memorandum is entitled "Argument" and discusses Plaintiff's claim that "Equifax Violated 15 U.S.C. §§ 1681e(b) and 1681i(a)."  The memorandum does not discuss the elements of these claims nor offer any evidence that fulfills any element of the claims.

## III.    Plaintiff's claim against FFCC under 15 U.S.C. § 1681s-2(b).

The next portion of Plaintiff's memorandum discusses her claim that "FFCC Violated 15 U.S.C. § 1681s-2(b)."  Once again, Plaintiff does not list the elements of her claim nor discuss how any particular piece of evidence supposedly fulfills any element of her claim.

Consumers have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts. *See Holden v. Holiday Inn Club Vacations Inc.,* 98 F.4th 1359, 1366 (11th Cir. 2024), *citing* 15 U.S.C. § 1681s–2(c)(1). The only private right

of action arises under § 1681s–2(b), which requires furnishers to investigate after receiving a notice of a dispute from a credit reporting agency and report the results back. *Id.*

To succeed on her dispute-related claims, Plaintiff must first identify inaccurate or incomplete information that FFCC sent a credit reporting agency after receiving her dispute. *See Felts v. Wells Fargo Bank*, 893 F.3d 1305, 1313 (11th Cir. 2018). In that case, the 11th Circuit held:

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*Id., see also Cahlin v Gen. Motors Acceptance Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (plaintiff must show that a consumer report was inaccurate.)

More recently in *Holden*, the Court, relying on *Felts*, explained:

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information.

*Id.* at 1367.

The Court also ruled that to meet the initial burden of proving inaccuracy, a plaintiff must establish that "the alleged inaccuracy was objectively and readily verifiable." *Id.* at 1363. The ruling made clear that this standard applies to both factual and legal disputes. *Id.* ("Whether the alleged inaccuracy is factual or legal is beside the point.") And the Court held that an alleged inaccuracy falls short of this standard when "it stems from a contractual dispute without a straightforward answer." *Id.* (internal citations and quotations omitted).

Here, Plaintiff disputes that she owes the medical debt that Defendant was credit reporting. But she fails to produce any evidence that a "reasonable investigation" would have corroborated her claim. She, for example, fails to offer evidence suggesting that had Defendant contacted the creditor, it would have sided with her in the dispute. In a similar FCRA case in which the plaintiff claimed she didn't owe the debt, another court in this Circuit recognized: "the creditor, was in the best position to determine whether the account was fraudulent and that [defendant] had no right to relieve Plaintiff of her obligation." *See Walker v. Experian*, 2024 U.S. Dist. LX 56129, at 16-17* (M.D. Ala. Mar. 28, 2024).

Plaintiff asserts that "FFCC possessed its own correspondence (Exhibit B) reflecting Amanda M. Parfait's name, address, phone number, and medical information-unambiguously different from Plaintiff[']s identifiers." (Dkt # 57, PageID 429) This assertion appears to rely on the document Plaintiff submitted as "Exhibit B." It has not been authenticated and is not admissible. Plaintiff does not discuss which of the elements of her claim this assertion is supposed to fulfill.

Plaintiff argues that "When FFCC received the ACDV dispute, it was obligated to investigate and/ or compare that correspondence against the disputed account's identifiers." In support of this claim Plaintiff cites Saunders *v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142,

5

148 (4th Cir. 2008), which discusses "the additional duties a furnisher incurs under § 1681s-2(b) if a consumer disputes the accuracy of information that the furnisher reports." And she cites *Seamans v. Temple Univ.*, which holds that "that the reasonableness of a furnisher's investigation involves weighing 'the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information.'" *Id.* 744 F.3d 853, 865 (3d Cir. 2014), quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004). Because determining the reasonableness of a furnisher's investigation involves weighing the evidence, it typically must be done by a jury, not through a motion for summary judgment. See *Cont'l Divide Ins. Co. v. Rumba Tours, LLC*, No. 22-CV-23392-SEITZ, 2023 U.S. Dist. LX 226910, at *2 (S.D. Fla. Dec. 20, 2023) ("It is the role of the jury to weigh conflicting evidence, make inferences, and determine the credibility of the witnesses.") For this reason as well, Plaintiff is not entitled to summary judgment.

Plaintiff claims that "FFCC modified the ACDV fields—changing the DOB, stripping the middle initial, altered the social security number, and altering the address—to manufacture a false match to Plaintiff." (Document 57, Page ID No. 429) Plaintiff follows this baseless accusation with a citation to the document she submitted as Exhibit G, which is another unauthenticated inadmissible document.

### A. Plaintiff did not file materials showing that FFCC failed to conduct an investigation of Plaintiff's alleged dispute.

Plaintiff's motion for summary judgment as to a claim under 15 U.S.C. § 1681s-2(b) should also be denied because she failed to meet her burden of proof. Plaintiff's motion alleges that Defendants violated the Fair Credit Reporting Act ("FCRA"). To succeed, Plaintiff has the burden to show a violation of 15 U.S.C. § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute. *See id.*

> The FCRA is a consumer protection act that imposes certain duties on CRAs and "furnishers of information" to CRAs. Furnishers of

6

information, including mortgage lenders, are required to (1) report accurate information to CRAs regarding consumers, *see* 15 U.S.C. § 1681s-2(a); and (2) conduct an investigation after receiving notice from a CRA of a dispute lodged by a consumer regarding information provided by the furnisher, *see id*. § 1681s-2(b). Consumers have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts. *See id.* § 1681s-2(c)(1). Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute.

* * *

Upon receipt of a notice from a CRA that a consumer disputes the completeness or accuracy of any information provided by a furnisher, the furnisher must (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; and (3) report the results of the investigation to the CRA. *See id.* § 1681s-2(b)(1). If the furnisher finds, following an investigation, that an item of information disputed by a consumer is incomplete, inaccurate, or cannot be verified, the furnisher must either modify, delete, or permanently block reporting of that information. *See id.* § 1681s-2(b)(1)(E). Further, with respect to information the furnisher finds to be inaccurate or incomplete, the furnisher also must report those results to all other CRAs. *See id.* § 1681s-2(b)(1)(D).

* * *

The "appropriate touchstone" for evaluating a furnisher's investigation under § 1681s-2(b) is "reasonableness." *Id.* at 1301-02. "[W]hat constitutes a 'reasonable investigation' will vary depending on the circumstances of the case and whether the investigation is being conducted by a CRA under § 1681i(a), or a furnisher of information under § 1681s-2(b)." *Id.* at 1302. We have explained that "[w]hether a furnisher's investigation is reasonable will depend in part on the status of the furnisher — as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line-buyer — and on the quality of documentation available to the furnisher." *Id.* When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Id.*

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*See Felts*, supra at 1312-13.

Here, Plaintiff's motion for summary judgment fails for two reasons: (1) Plaintiff did not file evidence showing that Defendant's investigation was unreasonable, and (2) Plaintiff did not file evidence showing that *had* Defendant conducted a different investigation, the result would have been different *i.e.*, Defendant would have discovered that the information it reported was inaccurate or incomplete.  In contrast, the record shows that Defendant's policy and practice is to conduct reasonable investigations for disputes.

FFCC is a third-party debt collector that collects debts from responsible parties that allegedly breached agreements. *See I* (Defendant's verified response to Interrogatory #2).  FFCC has specialized in debt collection services for over thirty (30) years. *Id.* Pursuant to the policies and procedures developed by FFCC over that thirty-year time period, FFCC requires the original creditor, or its billing manager, that hires FFCC to collect its outstanding receivables, to either provide to FFCC or have available for FFCC's review, written documentation, i.e., patient agreement and account statement or other similar document that provides a description of the

charges due. *Id.* Based on the documents that support these accounts (agreements and account statements), FFCC can reasonably rely on the accuracy of the accounts placed for collection. *Id.*

It is FFCC's policy to only provide accurate information to credit reporting agencies (CRAs). *Id.* Further, it is FFCC's policy to conduct a reasonable investigation when a dispute is received, regardless of whether it is a direct dispute to FFCC or indirect dispute received through ACDVs from credit reporting agencies. *Id.*

FFCC trains its employees and provides guidance on how to conduct investigations of disputes. *Id.* FFCC trains its employees to ensure that its dispute investigations have a maximum possible accuracy. *Id.* For each dispute received by the CRAs from consumers, the CRA will review the consumer dispute received, determine the appropriate "dispute code" from a list of e-Oscar dispute codes, then submit the ACDV to FFCC for response. *Id.* These disputes are known as indirect disputes as they are routed through the CRAs prior to being sent to FFCC. *Id.* The CRAs do not forward all disputes to FFCC and will resolve some disputes without input from FFCC. *Id.* If the consumer attaches relevant documents or information to support their dispute to the CRAs, then the CRAs when submitting the ACDVs will (typically) include a description of the dispute and/or images from the consumer's dispute that would assist a data furnisher, like FFCC, with its investigation or establish why the consumer was disputing the subject account. *Id.* FFCC's personnel are to conduct the following investigation:

> A. E-Oscar dispute is received from Palinode and date-stamped.
>
> B. Account is immediately marked as disputed.
>
> C. The appropriate FFCC employee must review the dispute reason, see if the information matches what came from the client. I.E. Creditor, original and current balance and date if it does not match, mark the account to be removed from credit.

9

D. The appropriate FFCC employee must send a Y message to the collector handling. The collector then contacts the client/creditor to investigate and make sure all information reporting is accurate. *Id.* If the client/creditor does not respond in under 30 days FFCC must mark the account to be removed by coding it to be removed on the Metro2 file. *Id*.

As part of the investigation, FFCC personnel are to review: (1) the dispute code which is used to guide the investigation, (2) the account status code, (3) the account notes for the subject account which will include notes on the investigation of any previous disputes, communications between FFCC and the debtor, and communications between FFCC and the creditor, (4) the documents in FFCC's file for the subject account such as an itemized statement, (5) any reasons for the dispute as supplied by the ACDV, and (6) any documents provided by the alleged debtor included with the ACDV, as well as previous documents supplied by the alleged debtor to FFCC, all of which are kept in FFCC's file for the subject account. *Id.*

E. If the account code comes from Palinode stating it is not the individual's account, the appropriate FFCC employee must ensure with the client that the information FFCC has is accurate. *Id.*

F. If the dispute states it is paid in full, the appropriate FFCC employee must make sure the creditor still has the same balance as FFCC has or it must be corrected. *Id.*

*Id.*

Based on FFCC's over thirty years of experience investigating account disputes, this process for investigating disputes has proven to be reasonable. All investigators, and other persons who might perform investigations, are trained regarding the above process, including how to use FFCC's account software. *Id.*

Plaintiff failed to introduce evidence that FFCC's investigation was unreasonable, or that had FFCC conducted a different investigation, the result would have been different *i.e.*, FFCC would have discovered that the information it reported was inaccurate or incomplete. *See Felts*, supra at 1312-13. She instead simply claims that the information on her credit report was inaccurate. Even assuming Plaintiff could show that, which she has not, it would not address the

10

heart of Plaintiffs' claim against FFCC.  For these reasons, the Plaintiff's motion for summary judgment should be denied.

### IV.    Plaintiff submitted no evidence of willful misconduct - 15 U.S.C. § 1681n.

The next section of Plaintiff's memorandum argues that the actions of the Defendants were willful, invoking the damage provisions of 15 U.S.C. § 1681n.  Plaintiff argues that this willfulness is proven by Exhibit B and Exhibit G. Neither exhibit is authenticated. Neither is admissible as evidence, and neither demonstrates anything material or relevant.

The entire argument about Plaintiff's alleged "damages" is, in fact, irrelevant.  Plaintiff has not proven that any Defendant is liable for any of her claims.  Plaintiff herself states that the "full extent" of evidence in support of her claims for damages will not be presented until trial. *See* Doc. 57, Page ID No. 424.

Plaintiff also asserts that "No innocent explanation exists for modifying a DOB during a reinvestigation."  Plaintiff attributes the quoted language to *Williams v. First Advantage LNS Screening Sols., Inc*., 947 F.3d 735, 744 (11th Cir. 2020). Defense counsel's "word search" of that ruling on Lexis failed to reveal the word "innocent" or "EOB."[1]

Plaintiff also claims that "FFCC transmitted to Plaintiff another consumer's protected health information, confirming FFCC knew the account did not belong to Plaintiff before it was placed on her credit file."  *See* Doc. 57, PageID 431. Plaintiff provides no evidence supporting this claim. And even if it were true, it fails to show that FFCC didn't believe the account at issue belonged to Plaintiff. Plaintiff's lack of evidence to support her claim is fatal to her argument.

Plaintiff also asserts that "Equifax's discovery admission that it accepts furnisher responses without independent review (Exhibit C) reflects a systemic policy of reckless disregard for the

---

[1] On June 11, 2026, Plaintiff filed a Certificate of Compliance with Rule 11 indicating she either didn't use AI to assist in drafting her Motion or she used AI and personally reviewed every cited authority. *See* Doc. 63.

FCRA's reinvestigation mandate." She follows this assertion with an abbreviated citation to *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1307 (11th Cir. 2016). While *Hinkle* discusses "reckless disregard for a statutory duty," it does not support Plaintiff's assertion here.

Plaintiff also claims: "Both Defendants continued reporting the false account after receiving Plaintiff's identity documents." Plaintiff supports this claim by citing Exhibits D and H. The documents do not support her assertion. Exhibit D is an affidavit from Plaintiff about her alleged damages—which is irrelevant to the Motion.

Plaintiff next asserts that "Defendants Cannot Assert a Statute of Limitations Defense." (Document No. 57, Page ID # 432). She bases this argument on the assertions that "FFCC did not add Collection Item *07 44 to Plaintiff's Equifax report until March 2025 (Exhibit I). All claims were filed on July 14, 2025."  Exhibit I, like the rest of the exhibits submitted by Plaintiff, isn't authenticated, and therefore not admissible. It is material evidence of nothing. Because Plaintiff has failed to authenticate any of her filed documents, her motion for summary judgment should be denied.

It is a bedrock principle of law that a plaintiff must show inaccuracy to sustain an FCRA claim. Plaintiff's only support for her argument on this issue is her own self-serving testimony. And she offers no evidence that would support a finding that FFCC's investigation was not reasonable. Her Motion for Summary Judgment should therefore be denied.

By:

*/s/Dale T. Golden*
Dale T. Golden, Esq.
dgolden@mgl.law
Martin Golden Lyons Watts Morgan PLLC
410 Ware Boulevard, Suite 806
Tampa, Florida 33619
Main Line: (813) 251-3632
Counsel for Defendant FFCC

12

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record via the court's

CM/ECF system and served on Plaintiff Amanda A. Parfait via email to sewtillblue@gmail.com

on June 15, 2026.


/s/ Dale T. Golden
Dale T. Golden, Esq.


**<u>Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in
the Preparation of This Filing</u>**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial
intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial
intelligence was not utilized in the preparation of this filing in any way. I understand that,
whether I represent myself or I am an attorney representing a client, I have an affirmative
obligation to read each case cited in this filing. If I fail to do so and a case upon which I
rely does not exist or does not reasonably stand for the cited proposition, I understand that
the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure.
I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this
rule applies equally to counsel and unrepresented parties, and I am familiar with the
sanctions available for violations of Rule 11. If this certification is made by counsel, I
further understand that citation to a case that either does not exist or does not reasonably
stand for the cited proposition may be treated as a violation of my oath of candor toward
the tribunal and a basis on which my admission to practice in the Middle District of Florida
could be revoked or suspended. Further, whether I represent myself or I am an attorney
representing a client, I understand that by making this certification under penalty of perjury
I could be referred for criminal prosecution if the statements I make here are false.


/s/ Dale T. Golden
Dale T. Golden, Esq.