UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMANDA A. PARFAIT,

Plaintiff,
vs.
EQUIFAX CONSUMER SERVICES LLC,

EXPERIAN INFORMATION
SOLUTIONS LLC,

FIRST FEDERAL CREDIT CONTROL
INC

Defendant(s)

Case No.: 6:25-CV-01296-AGM-NWH

PLEADING TITLE

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN RESPONSE TO DEFENDANT EQUIFAX CONSUMER SERVICES LLC OPPOSITION

NOW COMES, Plaintiff Amanda A. Parfait ("Plaintiff"), appearing pro se, and respectfully submits this Reply in support of her Motion for Summary Judgment and in response to Defendant Equifax Consumer Services LLC's ("Equifax") Memorandum in Opposition.

## I. INTRODUCTION

Equifax's opposition rests on a single premise: that discovery is incomplete and summary judgment is therefore premature. But the declaration submitted by Equifax's own counsel, filed under penalty of perjury, contradicts the claimed diligence and exposes the discovery argument as hope rather than evidence of a genuine dispute. A party opposing summary judgment "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence." Street v. J.C. Bradford & Co.,

1

886 F.2d 1472, 1479 (6th Cir. 1989).

The Case Management and Scheduling Order requires that an opposition "shall" be accompanied by "affidavit(s) and other evidence in the form required by Federal Rule of Civil Procedure 56" (ECF No. 33 at 6, ¶ H)—both affidavits and other evidence, not attorney argument in their place. Equifax submitted neither. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986), reinforces this: a party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial," and absent "significant probative evidence," cannot reach a jury on allegations alone.

The undisputed record—Plaintiff's sworn Affidavit; the Declaration/Affidavit of Amanda M. Parfait, the actual owner of the disputed account (ECF No. 55, Ex. A); corroborating social media and public records; Plaintiff's hospital records from Orlando Regional Medical Center; and Equifax's own written verification response—establishes that Equifax published inaccurate information in violation of 15 U.S.C. §§ 1681e(b) and 1681i(a), and that its conduct constitutes willful noncompliance under 15 U.S.C. § 1681n. FFCC's subsequent removal of the disputed account from the Plaintiff's credit file only underscores the point: a jury could find that removal is an admission the reporting was inaccurate from the start.

## II. EQUIFAX'S OWN COUNSEL DECLARATION REFUTES ITS CLAIM OF DILIGENCE

Equifax's declaration ("Decl.") asserts discovery is incomplete despite its "diligence." (Decl. ¶ 3.) The sworn timeline says otherwise: Equifax served discovery on

2

October 23, 2025; Plaintiff timely responded November 24, 2025 (Decl. ¶ 6); Equifax served no follow-up discovery afterward; it never pursued discovery against Co-Defendant FFCC, the furnisher of the disputed information (Decl. ¶ 8); and no party has noticed any deposition (Decl. ¶ 9). Eight months passed between Plaintiff's responses and this filing without action. The March 8, 2027, scheduling deadline is the close of discovery, not an invitation to begin it—Equifax's inaction is not diligence.

Equifax, as a consumer reporting agency, maintains its own dispute records independent of FFCC, yet produced none showing any investigation in June 2025. The only documented entry in that period, dated July 23, 2025, reads "Completed—Legal Package Generation" (Ex. 1)—postdating this lawsuit and reflecting litigation preparation, not investigation. That absence of documentation is confirmed by Equifax's own admitted procedure: it transmits an ACDV to the furnisher, and if the furnisher verifies the account, "Equifax will make no changes... and will continue to report it as it previously appeared." (ECF No. 57, Ex. F at 8–9.) That is a pass-through, not an independent reinvestigation, and a jury could find it fails to satisfy the FCRA's reinvestigation obligation.

## III. EQUIFAX'S "MISSING INFORMATION" IS A WISH LIST, NOT EVIDENCE OF A GENUINE DISPUTE

Paragraphs 11 through 20 of counsel's declaration consist of ten variations of "Equifax needs to complete discovery regarding whether" a fact exists (Decl. ¶¶ 11–20)—none asserting that any such fact does exist, and none identifying a witness, document, or evidence supporting Equifax's position. Under Anderson, a catalogue

3

of things a party hopes to find is speculation, not significant probative evidence. Most damning, counsel swears Equifax has not had the opportunity to discover "whether the disputed account at issue belonged to Plaintiff" (Decl. ¶ 11)—a question Plaintiff has already answered under oath and through the Affidavit of Amanda M. Parfait, unrebutted by Equifax. Summary judgment may be denied at an early discovery stage "only if further discovery would be pointless and the movant is clearly entitled to summary judgment." Blumel v. Mylander, 919 F. Supp. 423, 428 (M.D. Fla. 1996). Equifax has not explained what its ten discovery categories would reveal, why that information is not already in its own possession, or how it could overcome two unrebutted sworn affidavits. Further discovery here would be pointless.

## IV. EQUIFAX'S OWN VERIFICATION RESPONSE CONFIRMS THE INACCURACY AND THE ABSENCE OF A REASONABLE REINVESTIGATION

Equifax's written verification stated the disputed item "belongs to" Plaintiff while modifying only the additional information, balance date, and status date fields—yet the additional-information field itself noted, "Consumer Disputes This Account Information." (ECF No. 57, Ex. C.) Equifax simultaneously claimed to verify ownership while acknowledging the dispute—the output of a pass-through, not an independent reinvestigation. That verification is now directly contradicted by two sworn affidavits: Amanda M. Parfait's, swearing the account is hers, and Plaintiff's, swearing it is not. Equifax has produced no sworn evidence, no investigation notes,

and no documentation of independent inquiry to support its verification. A reasonable jury could only conclude that Equifax's reinvestigation was a formality, and that its continued reporting violated the FCRA.

**V. EQUIFAX'S CHALLENGE TO PLAINTIFF'S EVIDENCE LACKS MERIT**

Equifax attacks Plaintiff's exhibits as "unauthenticated," but under Fed. R. Civ. P. 56(c)(4), Plaintiff's affidavit—made on personal knowledge, setting out admissible facts, and demonstrating competency—authenticates the exhibits attached to and identified within it. Equifax does not contest the substance of any exhibit, only its form. (*see* ECF No. 57, Exhibit listed below).

The Facebook screenshot (Ex. K) shows Amanda M. Parfait's profile reflecting a date of birth matching FFCC's own records for the disputed account—corroborating identity evidence Equifax does not substantively rebut. The Whitepages screenshot (Ex. L) confirms the phone number and address on the medical documentation and that Amanda M. Parfait previously resided at, which FFCC transmitted to Plaintiff, corroborating both her Affidavit and the ACDV address discrepancy. Plaintiff's hospital records from Orlando Regional Medical Center, the original creditor (Ex. J), confirm Plaintiff did not receive emergency services from January 2022 through August 2024—affirmatively establishing she could not have incurred the debt. Equifax addresses none of this substance.

Equifax's arguments regarding an expert witness (Decl. ¶ 7) and the amended complaint is irrelevant to the material facts at issue. And its speculation about

5

undisposed damages witnesses (Decl. ¶ 12) are not evidence of a genuine dispute on liability; this Motion seeks only a liability determination, with damages evidence reserved for trial.

## VI. THE RECORD IS ADEQUATE FOR SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR

Plaintiff has submitted her own sworn Affidavit; the sworn Declaration & Affidavit of Amanda M. Parfait identifying herself as the true account owner, unrebutted by Equifax; corroborating social media and public records; hospital records confirming no emergency services during the relevant period; and Equifax's own verification response, which claims the account was verified while acknowledging the dispute, and yet, Defendant offers no supporting investigation documentation. Equifax, in contrast, has submitted only a counsel declaration admitting it never pursued discovery from FFCC, never noticed a deposition, and cannot identify a single disputed fact—only categories it hopes to investigate someday—plus attorney argument. "Summary judgment may only be decided upon an adequate record." WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir. 1988). That record is before the Court, and there is no genuine dispute of material fact.

## VII. CONCLUSION

Three things are beyond dispute. First, Equifax's own attorney admits it pursued no discovery from FFCC, noticed no depositions, and served no follow-up requests for eight months. Second, Equifax's sole verification—claiming the account

belonged to Plaintiff—is contradicted by two sworn, unrebutted affidavits and supported by no investigation notes. Third, everything Equifax claims to need is already answered: Plaintiff did not incur this debt, Amanda M. Parfait did. The removal of the disputed account from Plaintiff's credit file on May 8, 2026, does not undo the harm of over fourteen months of unlawful reporting—it confirms the reporting should never have continued past Plaintiff's first dispute. Under Anderson v. Liberty Lobby, a party that cannot produce significant probative evidence of a genuine dispute does not get to a jury. Plaintiff respectfully requests that this Honorable Court grant her Motion for Summary Judgment against Defendant Equifax Consumer Services LLC, find that Equifax violated the FCRA, and award such other and further relief as is just and proper.

Dated: July 06, 2026

Respectfully submitted,

Amanda A. Parfait, Pro Se
10422 Bridlewood Ave
Orlando, FL 32825
(561) 914-6561
sewtillblue@gmail.com

## CERTIFICATE OF SERVICE

I, Amanda A. Parfait, hereby certify that on July 6, 2026, I presented the foregoing PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN RESPONSE TO DEFENDANT EQUIFAX CONSUMER SERVICES LLC OPPOSITION with the Clerk of the Court, which will send notification to Defendant Equifax by way of the CM/ECF system and of such filing to all counsel of record.

7

**<u>Certification Under Penalty of Perjury That Artificial Intelligence</u>**
**<u>Was Used in the Preparation of This Filing</u>**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: to reorganize Plaintiff's reply draft in response to FFCC's opposition. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure, and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure, and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

8